UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ANNE A. and KATHLEEN A., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY; UNITED BEHAVIORAL HEALTH; and THE APPLE, INC. SMALL BUSINESS HEALTH OPTIONS PROGRAM, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO MAINTAIN CONFIDENTIALITY DESIGNATIONS (DOC. NO. 38)** <br><br> Case No. 2:20-cv-00814 <br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Daphne A. Oberg |

Defendants United HealthCare Insurance Company, United Behavioral Health, and the Apple, Inc. Small Business Health Options Program have filed a Motion for a Protective Order to Maintain Confidentiality Designations.[1] Defendants have designated certain documents as "Confidential Information" pursuant to the Standard Protective Order[2] in effect in this case, and seek to maintain this designation.[3] Plaintiffs Anne A. and Kathleen A. oppose the motion, arguing the disputed documents are publicly available and, therefore, cannot be considered confidential.[4] The court held a hearing on December 21, 2022.[5]

---

[1] ("Mot.," Doc. No. 38.)

[2] *See Standard Protective Order*, https://www.utd.uscourts.gov/sites/utd/files/Standard_Protective_Order.pdf.

[3] (Mot. 3, Doc. No. 38.)

[4] (*See* Opp'n to Defs.' Mot. for a Protective Order ("Opp'n"), Doc. No. 40.)

[5] (*See* Min. Entry for Hr'g, Doc. No. 43.)

1

Defendants have established the disputed documents contain confidential business information. They have also demonstrated a risk of economic harm likely to result from public disclosure which outweighs Plaintiffs' interest in disclosure—particularly where Plaintiffs have not established public disclosure is necessary. Accordingly, the motion is granted.

## BACKGROUND

This case involves a health care coverage dispute.[6] Plaintiffs Anne A. (plan holder) and Kathleen A. (plan beneficiary), bring two causes of action regarding the denial of coverage for mental health services rendered to Kathleen A.: (1) a claim for recovery of plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retiree Income Security Act of 1974[7] (ERISA), and (2) a claim for violation of the Mental Health Parity and Addiction Equity Act of 2008[8] (the "Parity Act"), pursuant to 29 U.S.C. § 1132(a)(3).[9]

Plaintiffs served Defendants with several discovery requests on June 4, 2022, including requests for admissions, interrogatories, and requests for production of documents.[10] In response, Defendants served written objections and responses and produced documents, including documents designated as "Confidential Information" under the Standard Protective Order.[11] On October 7, 2022, Plaintiffs sent Defendants a letter, challenging the confidentiality

---

[6] (*See* Mot. 3–4, Doc. No. 38.)

[7] 29 U.S.C. §§ 1001, *et seq.*

[8] 29 U.S.C. § 1185a.

[9] (*See* Compl. 2, 10–16, Doc. No. 2; Mot. 4, Doc. No. 38.)

[10] (*See* Mot. 4, Doc. No. 38.)

[11] (*See id.*)

designations for certain documents (the "disputed documents").[12] Defendants replied on October 28, 2022, maintaining their original position regarding confidentiality and communicating their intent to seek a protective order to preserve the designations, consistent with paragraph 9(c) of the Standard Protective Order.[13] Defendants filed the current motion on December 2, 2022.[14]

## LEGAL STANDARDS

The District of Utah's Standard Protective Order applies in this case.[15] The Standard Protective Order operates "[p]ursuant to Rule 26(c) of the Federal Rules of Civil Procedure"[16] and provides that "any person or entity [may] seek a modification of [the Standard Protective Order] at any time either through stipulation or Order of the Court."[17] Under Rule 26(c):

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

---

[12] (*See* Ex. A to Mot., Electronic Letter from Brent J. Newton to Chris Martinez and Michael H. Bernstein (Oct. 7, 2022), Doc. No. 38-1.) The parties dispute the confidentiality designations for the: (1) Milliman Care Guidelines for Inpatient Rehabilitation Facility Care, (2) Milliman Care Guidelines for Subacute/Skilled Nursing Facility Care, (3) UnitedHealthcare Hierarchy of Clinical Evidence Policy and Procedure, (4) MCG Health Summary of Guideline Development Policies and Procedures, (5) UnitedHealthcare Medical Technology Assessment Committee—Function and Structure Policy and Procedure, (6) UnitedHealthcare Medical Technology Assessment Committee Charter, and (7) United Behavioral Health Clinical Technology Assessments. (*See id.* at 2–3.)

[13] (*See* Mot. 4, Doc. No. 38.)

[14] (*See generally id.*)

[15] *See* DUCivR 26-2 ("The Standard Protective Order, available on the court's website, applies in every case involving the disclosure of any information designated as confidential, unless the court orders otherwise. It is effective by operation of this rule at the time a case is filed and does not need to be entered in a case docket to be effective.").

[16] SPO 1; *see also* Fed. R. Civ. P. 26(c).

[17] SPO ¶ 17.

3

> . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.[18]

Where a party seeks a protective order to maintain confidentiality designations of trade secrets or other confidential commercial information, the court must weigh "the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims."[19] The moving party must satisfy a three-factor test by first, establishing the "information sought is a trade secret or other confidential research, development, or commercial information" and second, demonstrating that its disclosure "might be harmful."[20] Lastly, the moving party must show the harm from disclosure "outweighs the need for access."[21] If the moving party satisfies these three requirements, the burden "shifts to the party seeking unrestricted disclosure to establish that such disclosure is relevant and necessary."[22]

## ANALYSIS

Defendants argue public disclosure of the disputed documents would cause significant economic injury to UnitedHealthcare Insurance Company, United Behavioral Health (the

---

[18] Fed. R. Civ. P. 26(c)(1).

[19] *Modern Font Applications v. Alaska Airlines*, No. 2:19-cv-00561, 2021 U.S. Dist. LEXIS 21563, at *9 (D. Utah Feb. 2, 2021) (unpublished) (quoting *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992))).

[20] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 248 (D. Kan. 2010); *see also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009).

[21] *Dig. Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 491 (D. Colo. 1992); *see also In re Cooper*, 568 F.3d at 1190 ("It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure.").

[22] *Layne*, 271 F.R.D. at 249; *see also In re Cooper*, 568 F.3d at 1190.

"United Defendants"), and non-party MCG Health, LLC.[23] Defendants assert Plaintiffs lack any legitimate interest in the public disclosure of the disputed documents.[24] Plaintiffs argue the disputed documents are subject to the mandatory disclosure requirements of ERISA and the Parity Act. They contend that because these provisions mandate disclosure,[25] the documents are publicly available and cannot be considered confidential—particularly where the disclosure provisions do not explicitly provide any confidentiality safeguards.[26]

## I. The Proper Standard

Defendants contend the balancing test outlined above applies to their motion.[27] Plaintiffs argue the balancing test does not apply because the mandatory disclosure provisions of ERISA and the Parity Act control instead, and serve to make the information public.[28] Plaintiffs also argue that neither 29 U.S.C. § 1024(b)(4) nor 29 C.F.R. § 2590.712(d) contain provisions permitting information subject to mandatory production to be designated as confidential.[29] According to Plaintiffs, the omission of a confidentiality provision is evidence that Congress and federal regulators decided such information should not be treated as confidential.[30] In support of

---

[23] (Mot. 3, Doc. No. 38.) MCG licenses care guidelines to the United Defendants and other entities for a fee. (*See* Ex. 4 to Mot., Decl. of Conor Bagnell ¶ 4, Doc. No. 38-4.)

[24] (Mot. 8, Doc. No. 38.)

[25] *See* 29 U.S.C. § 1024(b)(4); 29 C.F.R. § 2590.712(d).

[26] (Opp'n 2–6, Doc. No. 40.)

[27] (*See* Mot. 5, Doc. No. 38.)

[28] (*See* Opp'n 5–6, Doc. No. 40.)

[29] (*See id.* at 5–6.)

[30] (*See id.* at 5.)

this position, Plaintiffs point to overarching policy considerations underlying the Parity Act, such as the goal of "raising awareness" of mental health and substance use disorder treatment.[31]

Defendants briefly question whether the disputed documents are subject to mandatory production under ERISA and the Parity Act at all.[32] Defendants then argue that even if these provisions apply, the disputed documents are still not publicly available because their disclosure is limited to plan participants and/or potential participants, not the public at large.[33] In other words, only individuals satisfying eligibility criteria (i.e., being employed by Apple, Inc.) have any right to production of plan information and only upon request.[34]

It is true that neither disclosure provision, of the Parity Act or ERISA, discusses confidentiality of the information required to be produced. ERISA's mandatory disclosure provision requires the plan administrator, "upon written request of any participant or beneficiary," to "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."[35] The mandatory production provision of the Parity Act requires the "criteria for medical necessity determinations made

---

[31] (*See* Ex. 1 to Opp'n, 2022 MHPAEA Report to Congress 1, 9, Doc. No. 40-1.) Plaintiffs argued this public policy position in much greater depth at the hearing than in their brief.

[32] At the hearing, Defendants characterized this as an "issue for another day," and focused instead on the issue of public availability.

[33] (Mot. 8, Doc. No. 38.); *see also* 29 U.S.C. § 1024(b)(4) (providing that plan "participant[s]" may seek mandatory production of plan information); 29 C.F.R. § 2590.712(d)(1) (providing that "any current or potential participant" may seek mandatory production of plan information).

[34] *Id.* It is worth noting that neither party was able to point to case law evaluating the issue of public availability in light of the ERISA and Parity Act mandatory production requirements.

[35] 29 U.S.C. § 1024(b)(4).

6

under a group health plan with respect to mental health or substance use disorder benefits (or health insurance coverage offered in connection with the plan with respect to such benefits)" to be made available "to any current or potential participant, beneficiary, or contracting provider upon request." [36] And for plans subject to ERISA, "instruments under which the plan is established or operated" must also "generally be furnished to plan participants within 30 days of request."[37]

Plaintiffs argue the lack of confidentiality safeguards for this plan information indicates congressional and regulatory intent for the information to be public.[38] But just as the statute and rule lack confidentiality language, they also lack language mandating release of plan information to the public as a whole. The lack of provisions addressing confidentiality and public availability is neither ambiguous nor irrational.[39] The broadest group with rights of access to this information consists of current and potential participants or beneficiaries.[40] In other words, even if the disputed documents are subject to mandatory production, they are not publicly available. Instead, they are available only to an exclusive and definable group of people—potential and current plan participants and beneficiaries. And where the parties agree the documents have

---

[36] 29 C.F.R § 2590.712(d).

[37] *Id.*

[38] (*See* Opp'n 5–6, Doc. No. 40.)

[39] "It is a well[-]established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls." *HealthTrio, Inc. v. Centennial River Corp.*, 653 F.3d 1154, 1161 (10th Cir. 2011) (citations and internal quotation marks omitted).

[40] *See* 29 U.S.C. § 1024(b)(4); 29 C.F.R § 2590.712(d).

already been produced,[41] the only issue is the designation of these documents as confidential, not their discoverability.[42]

At the hearing, Plaintiffs also argued the policies underlying the Parity Act, such as raising awareness and reducing the stigma of mental health and substance use treatment, support a finding that any information subject to mandatory disclosure should be considered publicly available. Plaintiffs rely on a report from the Department of Treasury, outlining campaigns by agencies such as the Department of Health and Human Services and the Department of Labor to reduce stigma and increase awareness of such conditions and their treatment.[43] But nowhere does this report indicate an intent that information subject to mandatory disclosure be made fully public. In fact, in numerous places, the report highlights the disclosure obligations *to plan participants and beneficiaries*.[44] This is not enough to show that information subject to the mandatory disclosure requirements of ERISA and the Parity Act is (or should be) considered publicly available such that it cannot be designated confidential in discovery during litigation.

Nothing about the language or structure of the mandatory disclosure provisions of ERISA or the Parity Act eliminates the need to balance the competing interests at stake when

---

[41] (*See* Mot. 2, Doc. No. 38 (referencing the disputed documents "produced . . . in response to Plaintiff's discovery requests"); Opp'n 2–3, Doc. No. 40 (referencing the same documents).)

[42] At the hearing, Plaintiffs conceded the cases cited in their opposition brief on this point are not wholly analogous because they involve the outright refusal to produce documents—which is not the case here. *See Hernandez v. Prudential Ins. Co. of Am.*, No. 2:99-cv-898, 2001 U.S. Dist. LEXIS 15231 (D. Utah Mar. 27, 2001) (unpublished); *Teen Help v. Operating Eng'rs Health & Welfare Trust Fund*, No. C 98-2084, 1999 U.S. Dist. LEXIS 21989 (N.D. Cal. Aug. 24, 1999) (unpublished).

[43] (*See* Ex. 1 to Opp'n, 2022 MHPAEA Report to Congress 1, 9, Doc. No. 40-1.)

[44] (*See, e.g., id.* at 38, 50.)

evaluating the appropriateness of confidentiality designations.[45] Accordingly, to maintain their confidentiality designations, Defendants must (1) establish the confidential nature of the disputed documents; (2) demonstrate harm might result from disclosure; and (3) show the risk of such harm outweighs Plaintiffs' interest in disclosure.

      a. *Defendants Have Established the Disputed Documents Constitute Other Confidential Research, Development, or Commercial Information.*

In order to maintain their confidentiality designations, Defendants must first establish the "information sought is a trade secret or other confidential research, development, or commercial information."[46]

Plaintiffs' only argument on this point is that Defendants cannot establish the disputed documents are confidential because they are publicly available in that they are subject to mandatory production under ERISA and the Parity Act.[47] For the reasons discussed above, this argument is unavailing. Defendants argue the disputed documents "constitute confidential or

---

[45] *See In re Cooper*, 568 F.3d at 1190 ("The need for the trade secrets [or confidential information] should be balanced against the claim of harm resulting from the disclosure." (citations and internal quotation marks omitted)); *Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 12-2760, 2013 U.S. Dist. LEXIS 181550, at *25 (D. Kan. Dec. 31, 2013) (unpublished) ("[C]ourts must balance the risk of inadvertent disclosure to competitors against the risk of prejudice to the other party's ability to prosecute or defend the present action."); *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565, 2010 U.S. Dist. LEXIS 12893, at *23 (D. Kan. Feb.12, 2010) (unpublished) ("The need for the trade secrets should be balanced against the claim of harm resulting from the disclosure."); *see also MD Helicopters, Inc. v. Aerometals, Inc.*, 2017 U.S. Dist. LEXIS 16620, at *4 (E.D. Cal. Feb. 3, 2017) (unpublished) ("In determining whether, and how, to [] issue the protective order, the court must balance the competing interests.").

[46] *Layne*, 271 F.R.D. at 248; *see also In re Cooper*, 568 F.3d at 1190; *Centurion Indus*, 665 F.2d at 325.

[47] (Opp'n 6, Doc. No. 40.)

proprietary technical, scientific, financial, business, health, or medical information" for both MCG and the United Defendants.[48]  Defendants rely on affidavits in support of this position.[49]

As to MCG, Defendants provide a declaration from Conor Bagnell, MCG's Senior Vice President of Product Management and Strategic Alliances, attesting the care guidelines and MCG's Summary of Guideline Development Policies and Procedures are confidential.[50]  Mr. Bagnell avers these materials are "proprietary, copyrighted guidelines [licensed] to subscribers for a fee."[51]  According to Mr. Bagnell, MCG's guidelines are not "generally available" and "MCG takes substantial internal steps to protect the confidential nature of the guidelines," including granting licenses to a "limited set of organizations" and requiring all employees to sign confidentiality agreements.[52]

As for the remaining disputed documents, Defendants have provided declarations from Mishelle Appleby, a Director at United HealthCare Insurance Company,[53] and Jeffrey Meyerhoff, MD, the Senior National Medical Director of Optum Behavioral Health Solutions for

---

[48] (Mot. 3, Doc. No. 38 (internal quotation marks omitted)); *see also* SPO ¶ 2(a).

[49] Defendants provide three affidavits.  The first affidavit addresses the two Milliman Care Guidelines Documents and the MCG Health Summary of Guideline Development Policies and Procedures Document.  (*See* Ex. 4 to Mot., Decl. of Conor Bagnell, Doc. No. 38-4.)  The other affidavits address the remaining documents (UnitedHealthcare Hierarchy of Clinical Evidence Policy and Procedure, UnitedHealthcare Medical Technology Assessment Committee, UnitedHealthcare Medical Technology Assessment Committee Charter, and United Behavioral Health Clinical Technology Assessments).  (*See* Ex. 5 to Mot., Decl. of Mishelle Appleby, Doc. No. 38-5; Ex. 6 to Mot., Decl. of Jeffery Meyerhoff, MD, Doc. No. 38-6.)

[50] (*See* Ex. 4 to Mot., Decl. of Conor Bagnell ¶¶ 15–16, Doc. No. 38-4.)

[51] (*Id.* ¶ 7.)

[52] (*Id.* ¶¶ 8–11.)

[53] (*See* Ex. 5 to Mot., Decl. of Mishelle Appleby, Doc. No. 38-5.)

United Behavioral Health.[54] Ms. Appleby and Dr. Meyerhoff aver the remaining documents are confidential, business sensitive, and proprietary.[55] Both declarants attest the disputed documents are maintained on intranet websites, and that the United Defendants take various steps to maintain confidentiality and ensure the documents are not made available to the public, customers, or competitors.[56]

Defendants provide ample legal authority establishing that documents similar to those at issue in this case constitute proprietary, confidential information.[57] Additionally, at the hearing, Plaintiffs conceded Defendants likely have a financial or proprietary interest in the disputed documents. Moreover, Plaintiffs' counsel acknowledged he has routinely agreed to confidentiality designations of similar documents in the past. For these reasons, Defendants have satisfied their burden and established the confidential nature of the disputed documents.

---

[54] (*See* Ex. 6 to Mot., Decl. of Jeffery Meyerhoff, MD, Doc. No. 38-6.)

[55] (*See* Ex. 5 to Mot., Decl. of Mishelle Appleby ¶ 4, Doc. No. 38-5; Ex. 6 to Mot., Decl. of Jeffery Meyerhoff, MD ¶ 4, Doc. No. 38-6.)

[56] (*See* Ex. 5 to Mot., Decl. of Mishelle Appleby ¶ 3–5, Doc. No. 38-5; Ex. 6 to Mot., Decl. of Jeffery Meyerhoff, MD ¶ 3–5, Doc. No. 38-6.)

[57] *See Aitken v. Aetna Life Ins. Co.*, No. 16CIV4606, 2017 U.S. Dist. LEXIS 88181, at *2–3 (S.D.N.Y. June 2, 2017) (unpublished) (finding an affidavit attesting the documents at issue were "not publicly available" and accessed "through a password-protected intranet system" sufficient to establish their confidential nature); *He v. Cigna Life Ins. Co. of N.Y.*, No. 14 Civ. 2180, 2015 U.S. Dist. LEXIS 89103, at *4–7 (S.D.N.Y. July 8, 2015) (unpublished) (finding an affidavit attesting that defendant "does not disseminate the [Policy and Procedure] to the general public or to its competitors" and limits access to them via the company's password-protected intranet system, among other things, sufficient to establish their confidential nature); *Cohen v. Metro. Life Ins. Co.*, No. 00 Civ. 6112, 2003 U.S. Dist. LEXIS 4468, at *2–3 (S.D.N.Y. Mar. 25, 2003) (unpublished) (finding an affidavit "attesting specifically to the business purposes and internal confidential treatment of [] documents" sufficient to establish their confidential nature).

        *b. Defendants Have Sufficiently Demonstrated that Disclosure of the Disputed Documents Might Result in Harm.*

In order to maintain their confidentiality designations, Defendants must next demonstrate that disclosure "might be harmful."[58] Defendants rely on the same affidavits to support their position that public disclosure of the disputed documents would result in commercial and economic injury to both MCG and the United Defendants.[59]

Mr. Bagnell avers MCG will suffer commercial and competitive harm if the guidelines become publicly available.[60] He attests the care guidelines are the result of "an intensive, specialized, [and] independent process to author and edit [the] guidelines, using objective clinical expertise."[61] Mr. Bagnell also asserts that "public disclosure of MCG's guidelines could defeat MCG's business model and dissipate MCG's market."[62] Because MCG licenses the guidelines to subscribers for a fee, public disclosure could result in current or potential competitors pirating or selling MCG's guidelines, using MCG's guidelines "to develop derivative guidelines," or using them "to develop artificial intelligence and machine learning models."[63]

As for the remaining documents, Ms. Appleby and Dr. Meyerhoff attest the disputed documents are a result of many years of research, development, trial and error, and experience in

---

[58] *Layne*, 271 F.R.D. at 248; *see also In re Cooper*, 568 F.3d at 1190; *Centurion Indus.*, 665 F.2d at 325.

[59] (*See* Mot. 3, 5, Doc. No. 38.)

[60] (*See* Ex. 4 to Mot., Decl. of Conor Bagnell ¶¶ 12–14, Doc. No. 38-4.)

[61] (*Id.* ¶ 5.)

[62] (*Id.* ¶ 13.)

[63] (*Id.* ¶ 14.)

the marketplace.[64] According to Ms. Appleby and Dr. Meyerhoff, public dissemination of the disputed documents will "result in competitive disadvantage" to the United Defendants because "competitors (and would-be competitors) will [] have the advantage of using these [documents] to run their own claims and appeal departments or compare their own policies and procedures to [the United Defendants'] in an effort to improve them, without [] having to invest the time, expense[,] and effort" the United Defendants expended creating them.[65]

Again, Defendants point to legal authority in which similar statements from affidavits were deemed sufficient to demonstrate risk of harm from disclosure.[66] Plaintiffs do nothing to contradict Defendants' assertions of harm, and provide no contrary legal authority. Where nothing contradicts Defendants' claims, they have sufficiently demonstrated that disclosure of the disputed documents is likely to result in commercial and economic harm.

---

[64] (*See* Ex. 5 to Mot., Decl. of Mishelle Appleby ¶ 4, Doc. No. 38-5; Ex. 6 to Mot., Decl. of Jeffery Meyerhoff, MD ¶ 4, Doc. No. 38-6.)

[65] (Ex. 5 to Mot., Decl. of Mishelle Appleby ¶ 4, Doc. No. 38-5; Ex. 6 to Mot., Decl. of Jeffery Meyerhoff, MD ¶ 4, Doc. No. 38-6.)

[66] *See Aitken*, 2017 U.S. Dist. LEXIS 88181, at *2–4 (finding an affidavit attesting the defendant "devoted significant time and money to developing the[] documents" and that they "would be valuable to [defendant]'s competitors" sufficient to establish risk of harm); *He*, 2015 U.S. Dist. LEXIS 89103, at *5–7 (finding an affidavit attesting that the defendant "invested significant time and money in developing, maintaining and updating the [policies and procedures] . . . over the course of many years, and at great expense" and that competitors could "gain a competitive advantage by copying and implementing the[se] procedures," sufficient to establish risk of harm (internal quotation marks omitted)); *Cohen*, 2003 U.S. Dist. LEXIS 4468, at *2–3 (finding an affidavit attesting that the defendant would "suffer injury if the documentation were disclosed publicly, because competitors could gain advantage from the business method efficiencies [defendant] ha[d] achieved" sufficient to establish risk of harm).

        c. *The Risk of Economic Injury to Defendants Outweighs Plaintiffs' Interest in Disclosure.*

Lastly, in order to maintain their confidentiality designations, Defendants must demonstrate their risk of harm from public disclosure outweighs Plaintiffs' interest in disclosure. In considering this factor, courts weigh "the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims."[67]

Defendants have established a substantial risk of commercial and economic injury is likely to result if the disputed documents are publicly disclosed. In contrast, there is no indication the confidentiality designations will impair Plaintiffs' prosecution of claims. Indeed, Plaintiffs conceded as much at the hearing. And the documents have already been produced for use in this litigation.

At the hearing, Plaintiffs also argued the documents should no longer be designated confidential because "records of the court are presumptively open to the public" pursuant to Rule 5-3 of Utah's Local Rules of Civil Practice.[68] But Plaintiffs have not shown how this presumption impacts whether the documents are properly designated as confidential in discovery, or how it impacts their ability to prosecute their claims. Where the documents in dispute have not been filed with the court, they are not court records subject to this presumption.[69] And any document ultimately filed with the court which is redacted or sealed

---

[67] *Modern Font*, 2021 U.S. Dist. LEXIS 21563, at *9 (quoting *Nutratech*, 242 F.R.D. at 555 (citing *Brown Bag Software*, 960 F.2d at 1470)).

[68] DUCivR 5-3.

[69] *Cf. He*, 2015 U.S. Dist. LEXIS 89103, at *3 ("While there is a presumption of public access to judicial documents, [d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." (alteration in original) (citations and internal quotation marks omitted)).

must be accompanied by a motion for leave to file it under seal, giving Plaintiffs the opportunity to challenge the request.[70]

For these reasons, Plaintiffs' interest does not outweigh the likely risk of economic injury to Defendants if the confidentiality designation is removed from the disputed documents. Accordingly, Defendants have met their burden.

### d. Plaintiffs Have Not Established Disclosure of the Disputed Documents Is Relevant and Necessary.

Once the moving party satisfies the three requirements above, the burden shifts to the party seeking disclosure to establish that public disclosure is relevant and necessary.[71] Where the disputed documents have already been produced, Plaintiffs have conceded the confidential designations do not impair their ability to prosecute this case, and they have shown no other need for public disclosure of the documents, Plaintiffs have not satisfied their burden.

### CONCLUSION

Defendants have sufficiently established the disputed documents are confidential. Further, they've demonstrated a risk of economic harm likely to result from disclosure which outweighs Plaintiffs' interest in public disclosure. Where the confidential designations do not impede Plaintiffs' ability to prosecute this case, and Plaintiffs have not shown public disclosure

---

[70] *See* DUCivR 5-3(b).

[71] *See Layne*, 271 F.R.D. at 249; *see also In re Cooper*, 568 F.3d at 1190.

is necessary, the confidential designations may be maintained. Accordingly, Defendants' motion[72] is GRANTED.

DATED this 17th day of January, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[72] (Doc. No. 38.)